# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 51741-8-II |
| LIA YERA TRICOMO, | |
| Petitioner. | PUBLISHED OPINION |

CRUSER, J. — Lia Yera Tricomo seeks relief from her convictions and sentence for second degree murder, three counts of second degree assault, and second degree taking a motor vehicle without the owner's permission. Tricomo filed a timely pro se personal restraint petition (PRP) in which she claims that her convictions violate double jeopardy, that the trial court erred in failing to consider the effects of the drug Paxil at sentencing, that she received ineffective assistance of counsel at the plea stage, and that there was prosecutorial misconduct.

After the State responded to her pro se PRP, Tricomo obtained counsel who filed a supplemental PRP arguing, for the first time, that Tricomo's trial counsel performed deficiently when he failed to produce an appropriate expert at sentencing to offer an opinion on the effects of Paxil and that Tricomo was prejudiced by this deficient performance.

With respect to her original petition, we decline to address Tricomo's double jeopardy claim because it was previously raised and resolved on direct appeal, and she has not shown that the interests of justice require relitigation of this claim. We address the merits of Tricomo's claim that the trial court erred in declining to consider the effects of Paxil at sentencing and hold that Tricomo has not demonstrated that the trial court's decision constituted a fundamental defect that resulted in a complete miscarriage of justice. We also consider the merits of Tricomo's ineffective assistance of counsel and prosecutorial misconduct claims and conclude that Tricomo was not deprived of effective assistance of counsel and that the prosecutor did not commit misconduct. Accordingly, we deny her petition.

With respect to her supplemental petition, we hold that Tricomo's ineffective assistance of counsel claim regarding her counsel's failure to retain an appropriate expert on the effects of Paxil is untimely under RCW 10.73.090(1). We are not persuaded that this new ineffective assistance of counsel claim is "part and parcel," and therefore timely, to Tricomo's pro se claim that the trial court erred when it declined to consider one expert's opinion on the effects of Paxil or to her other timely raised claim of ineffective assistance of counsel at plea bargaining. Nor do we otherwise possess the inherent authority to extend the statutory time-bar. Therefore, we decline to address this new claim, raised for the first time in the supplemental petition.

FACTS

I. BACKGROUND

In late March 2013, Tricomo attempted suicide and was admitted to a hospital. As part of her treatment, her doctor prescribed her Paxil, an antidepressant. At a follow-up medical

appointment on April 3, her Paxil prescription was renewed. She saw her therapist the next day, who encouraged her to stay on her antidepressants.

On April 25, Tricomo saw her therapist again who noted,

Discussed and processed her ambivalence about the medication she is on. Looked at what she identifies as the root cause of her anger; She is angry that she is alive. She does not plan to harm herself, and in fact, talked about ways she used to inflict pain on herself. She does not want to do that anymore and does not want to take her life. However, she still in [sic] not happy about being alive.
. . . .
[Tricomo] does not like the way the medication makes her feel even though she knows she feels calmer and happier. She expressed confusion about the experience of being happier. It is uncomfortable and unfamiliar. It seems to also take away her energy for acting out in anger.

Suppl. Pet., Ex. 11 at 15.

On April 29, Tricomo brought some of her belongings to the home of her former counselor, John Alkins, to move in with him. Tricomo and Alkins drank vodka together. They had a sexual encounter in his home. During this sexual encounter, Tricomo attempted to tie him up with a rope, but he stated he did not like it, so she untied him. After untying Alkins, Tricomo grabbed a razor blade knife she had hidden in the bedroom, and she slit his throat approximately six times. Alkins walked around his house for several hours trying to stop the bleeding. Tricomo followed him throughout the house to ensure he would not leave. There was a struggle for the razor blade knife at the front door, and Alkins's wrist was cut during this struggle. Alkins then went back upstairs. Tricomo strangled Alkins with an extension cord, killing him.

The next day, Tricomo was arrested, and she confessed to the police. During her interview with the police, Tricomo mentioned the negative effect of her medication. Later, when Tricomo was in jail prior to trial, a psychiatric note said, "Paxil, made her want to kill people, had horrible withdrawal," and the Paxil was discontinued. Suppl. Pet., Ex. 14 at 146.

3

## II. GUILTY PLEA

The State charged Tricomo by amended information with second degree murder, three counts of second degree assault, and second degree taking a motor vehicle without the owner's permission.[1] The three counts of second degree assault were based on Tricomo's use of a razor blade knife to inflict neck wounds, use of a razor blade knife to inflict facial wounds, and use of a razor blade knife to inflict hand wounds. Tricomo pleaded guilty to the amended information.

For the second degree murder count, the parties agreed on a standard range sentence of 257 to 357 months. The plea agreement stated that while the State was going to recommend 357 months on the second degree murder count, the "[d]efense is free to argue for a lesser sentence," and the agreement recognized that the trial court could impose an exceptional sentence below the standard range. Clerk's Papers (CP) at 30. The State's sentencing memorandum provided, "Pursuant to plea agreement, Defendant may argue for *no less than* 257 months prison which is the low end of the standard range." *Id.* at 128.

During the plea colloquy, when discussing that the State would recommend 357 months, the court addressed Tricomo and said, "And you understand that you are not agreeing that that is what the court should order and that, in fact, [defense counsel] will be able to argue that the court should impose a lesser sentence on your behalf." Verbatim Report of Proceedings (VRP) (Nov. 6, 2014) at 8. Tricomo confirmed that she understood the parameters of her plea agreement as explained by the trial court.

---

[1] The State originally charged Tricomo with first degree attempted murder and first degree murder, but the State amended the information on November 6, 2014 as part of the plea agreement.

### III. SENTENCING

Before the sentencing hearing, both Tricomo and the State filed sentencing briefs. In her brief, Tricomo asked the court to consider expert Dhyana Fernandez's mitigation report and the reports of Dr. David Dixon and Dr. Delton Young. All three experts discussed the effects that the use and withdrawal from Paxil may have had on Tricomo's ability to form intent at the time of the crime.

Dixon, the defense expert, and Young, the State's expert, reached contradictory conclusions regarding Paxil's effects on Tricomo's mental state. Prior to pleading guilty, Tricomo was evaluated for diminished capacity by Dixon, a psychologist. Dixon discussed Paxil in his report and concluded, "Use of and withdrawal from Paxil at the time of the alleged crime may have diminished her ability to form intent, a requisite mental state. Paxil withdrawal exacerbated her mood disorder into a manic state with psychosis." CP at 78.

The State's expert, Young, also conducted a forensic psychological evaluation. He disagreed with Dixon about Paxil stating, "[T]here was no withdrawal: she was taking the medication every day (including on April 29th) as prescribed. It is possible that the medication generated aversive side effects (e.g., feeling 'nothing'); but it is more likely that the psychotic symptoms stemmed from alcohol abuse in a psychologically vulnerable individual." *Id.* at 94.

Fernandez wrote a mitigation report for sentencing that included a section on Paxil. Fernandez cited to several peer reviewed journal articles and articles from web-based sources, but the report contained no analysis. The State objected to Fernandez's report because it did not believe Fernandez was qualified to opine about the effects of Paxil.

5

No. 51741-8-II

At sentencing, the court said it would not consider the section on Paxil in Fernandez's report. The court reasoned that it did not "find that [Fernandez] has any expertise in that particular area and she basically only sets forth a number of articles suggesting that they may have some relevance." VRP (Jan. 28, 2015) at 39. However, the trial court did consider the expert reports from Young and Dixon, and it noted that "the doctors reference Paxil, both doctors, and the adverse side effects of this medication." *Id.* at 77.

The State asked the court to sentence Tricomo to 357 months and defense counsel asked the court to sentence Tricomo to 257 months. The court imposed the top of the standard range—357 months—for the murder conviction, with the other counts to run concurrently.

IV.  APPEAL AND MANDATE

Tricomo appealed her convictions and sentence, arguing that her convictions violated double jeopardy, that her guilty plea was not voluntary, and that the trial court erred in refusing to consider the portion of Fernandez's report regarding Paxil. *State v. Tricomo*, No. 47238-4-II, slip op. at 1 (Wash. Ct. App. Apr. 26, 2016) (unpublished) http://www.courts.wa.gov/opinions/ pdf/47238-4.16.cor.pdf. We affirmed her convictions and sentence. *Tricomo*, slip op. at 1. The mandate issued on January 5, 2017.

V. PERSONAL RESTRAINT PETITION

On January 2, 2018, Tricomo filed a timely pro se PRP arguing double jeopardy, ineffective assistance of counsel and prosecutorial misconduct at the plea stage, and trial court error for failure to consider the effects of Paxil on her mental state in rendering its sentencing decision. The State responded to Tricomo's petition.

6

Tricomo subsequently obtained counsel who filed a supplemental PRP and reply on December 31, 2018. In the supplemental PRP, Tricomo raised the new claim that she was deprived of effective assistance of counsel because trial counsel failed to obtain an appropriate expert on the effects of Paxil. She argued that due to her counsel's failure to obtain a qualified expert, the trial court never received accurate information about Paxil's effects on her mental state, causing the court to sentence her to the high end of the standard range. The supplemental PRP also contained Tricomo's reply in support of her timely raised argument that the trial court erred in declining to consider the effects of Paxil at sentencing.

A commissioner of this court accepted the supplemental petition for filing and ruled that we would decide whether to review the untimely claim when we address the merits of the timely filed pro se PRP. Ruling on Mot. To File Am. Pet., *In re Personal Restraint Petition of Tricomo*, No. 51741-8 (Wash. Ct. App. Jan. 4, 2019).

DISCUSSION

I. LEGAL PRINCIPLES

A petitioner may seek relief through a PRP when she believes she is under unlawful restraint. RAP 16.4(a)-(c). To obtain collateral relief through a PRP, the petitioner must demonstrate both error and prejudice. *In re Pers. Restraint of Sandoval*, 189 Wn.2d 811, 821, 408 P.3d 675 (2018). If the error was of constitutional magnitude, the petitioner must show actual and substantial prejudice, and if the error was not of constitutional magnitude, the petitioner must demonstrate that the error "represents a 'fundamental defect . . . that inherently resulted in a complete miscarriage of justice.'" *Id.* (alteration in original) (quoting *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013)). "Relief by way of a collateral challenge to a

7

conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

A PRP must be timely filed within one year after the judgment becomes final "if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). A PRP filed more than one year after a judgment and sentence has become final "must assert solely grounds for relief exempt from the one-year limit under RCW 10.73.100." *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 333, 422 P.3d 444 (2018).

In addition, "[a]s a general rule, 'collateral attack by [PRP] on a criminal conviction and sentence should not simply be a reiteration of issues finally resolved at trial and direct review, but rather should raise new points of fact and law that were not or could not have been raised in the principal action, to the prejudice of the defendant.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 670-71, 101 P.3d 1 (2004) (footnote omitted) (quoting *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999)). A petitioner is prohibited from relitigating an issue that was raised and rejected on direct appeal unless required in the interests of justice. *Id*. at 671.

## II. ANALYSIS

### A. ORIGINAL PERSONAL RESTRAINT PETITION

#### 1. DOUBLE JEOPARDY

Tricomo argues that her multiple assault convictions violate double jeopardy because the State failed to show separate courses of conduct for sentencing purposes. Tricomo raised this same issue in her direct appeal. *Tricomo*, slip op. at 1. Tricomo does not provide any additional facts

or analysis to demonstrate that the interests of justice require relitigation of this issue. *See Gentry*, 137 Wn.2d at 388. Therefore, we decline to consider it.

2. EVIDENCE AT SENTENCING

Tricomo asserts that the trial court erred because it should have considered mitigating evidence regarding Paxil's effect on her mental state. Specifically, Tricomo argues that the sentencing court erred in not considering the portion of Fernandez's report that discussed the effects of Paxil. We disagree.

Tricomo raised this same claim in her direct appeal—"that the trial court erred by not considering the experts' opinions about the effects of Tricomo's medications." *Tricomo*, slip op. at 11. We did not consider this argument because we concluded that *Tricomo* failed "to provide any argument as to how the trial court erred." *Id.* "An issue is considered raised and rejected on direct appeal if the same ground presented in the petition was determined adversely to the petitioner on appeal and the prior determination was on the merits." *Davis*, 152 Wn.2d at 671 n.14; *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 687, 717 P.2d 755 (1986). Because we did not previously address this argument on the merits, we reach the merits now.

As a general matter, a standard range sentence is not reviewable unless the trial court "failed to comply with procedural requirements of the [Sentencing Reform Act of 1981, ch. 9.94A RCW,] or constitutional requirements." *State v. Osman*, 157 Wn.2d 474, 482, 139 P.3d 334 (2006); RCW 9.94A.585(1). Therefore, we will reverse a standard range sentence only if the process by which the trial court arrived at that sentence was defective, as evidenced by "'a clear abuse of discretion or misapplication of the law.'" *State v. Blair*, 191 Wn.2d 155, 159, 421 P.3d 937 (2018) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)). This includes a

sentence that was imposed following a negotiated plea agreement. *In re Pers. Restraint of West*, 154 Wn.2d 204, 214, 110 P.3d 1122 (2005). Tricomo does not assert that this claim encompasses constitutional error. Thus, she must demonstrate that this alleged error is a fundamental defect resulting in a complete miscarriage of justice. *See Sandoval*, 189 Wn.2d at 821.

Tricomo fails to show that this claim of error represents a fundamental defect that resulted in a complete miscarriage of justice.[2] Sentencing courts have broad discretion in the "'sources and types of evidence'" they consider in determining a standard range sentence. *State v. Herzog*, 112 Wn.2d 419, 424, 771 P.2d 739 (1989) (quoting *Williams v. New York*, 337 U.S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)). Here, the section in Fernandez's report regarding Paxil contained a list of peer-reviewed scientific journals related to Paxil as well as a list of articles published on various websites. Fernandez identified herself as a "mitigation specialist," but she did not list any medical training in her background and experience. CP at 50. The trial court properly exercised its discretion in not considering the section in Fernandez's report regarding the effects of Paxil because Fernandez did not possess the requisite expertise to offer such an opinion.

The trial court did, however, consider opinions about the effects of Paxil on Tricomo's mental state provided by the two clinical experts who conducted her psychological evaluations.

---

[2] Tricomo relies on *Estates of Tobin by Tobin v. Smithkline Beecham Pharmaceuticals*, 164 F. Supp. 2d 1278 (D. Wyo. 2001). In *Tobin*, a civil products liability case, plaintiffs brought action against a pharmaceutical manufacturer alleging that a patient committed homicides and suicide as a result of ingesting the drug, Paxil. *Id.* at 1280. The jury entered a verdict in favor of the plaintiffs, and the manufacturer moved for judgment as a matter of law or for a new trial. *Id.* The court held that in "construing the evidence in the light most favorable to the non-moving party . . . a reasonable jury could find that Paxil caused the damages suffered by the plaintiff." *Id.* at 1283. *Tobin* does not support Tricomo's proposition that the sentencing court erred when it declined to consider Fernandez's report.

But the trial court was not persuaded by this evidence, and it focused instead on objective facts regarding the gruesomeness of the event itself rather than on Tricomo's underlying motivations in determining her sentence. In particular, the trial court stated,

> It's clear that there was some disagreement among the experts and that was taken into account at the time that this plea agreement was made. The issue before me today is not whether or not Ms. Tricomo had the ability to form a specific intent to kill. That's been established by her pleading guilty to this charge. Much of the information involves expert opinion about how to account for why Ms. Tricomo acted out.
> . . . Even if all of the details given by Ms. Tricomo are correct -- and I'll just parenthetically insert that we can't hear [Alkins's] side of the story -- even if all those details were correct, there is no basis for Ms. Tricomo having murdered Mr. Alkins. He did not deserve death.

VRP (Jan. 28, 2015) at 91-92. This passage illustrates that any question regarding Tricomo's state of mind, which would include whether Paxil impacted her mental condition, was an issue at the plea negotiation, but it was not decisive at sentencing. And in discussing the "perplexing issue" of "why" the murder occurred, the trial court stated that even if it took Tricomo at her word, this still did not reduce the egregiousness of the act itself. *Id.* at 92.

Given the trial court's broad discretion to impose a sentence anywhere within the standard range, the trial court's decision to impose a high-end sentence based on evidence other than Tricomo's mental state does not constitute a "'clear abuse of discretion or misapplication of the law.'" *Blair*, 191 Wn.2d at 159 (quoting *Porter*, 133 Wn.2d at 181). Consequently, Tricomo has failed to demonstrate a fundamental defect resulting in a complete miscarriage of justice arising from the trial court's decision to not consider evidence from Fernandez's mitigation report on the effects of Paxil.

3. INEFFECTIVE ASSISTANCE OF COUNSEL AND PROSECUTORIAL MISCONDUCT AT PLEA

Tricomo argues that her counsel was ineffective and that the prosecutor engaged in misconduct because "the prosecutor & counsel acted in conspiracy to obtain a guilty plea in creating a plea agreement for the top of the range, knowing there was no legal basis for the trial court to consider mitigating circumstances to go below the recommended sentence." Pet. at 7. She further contends that her counsel was ineffective and the prosecutor engaged in misconduct by including count III, second degree assault for facial wounds. We disagree.

a. LEGAL PRINCIPLES

i. INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant is entitled to effective counsel in the plea process. *State v. Estes*, 188 Wn.2d 450, 463, 395 P.3d 1045 (2017). A defendant claiming ineffective assistance of counsel bears the burden of establishing that counsel's performance was deficient and that the deficient performance resulted in prejudice. *Id.* at 457-58. As applied to the plea process, a defendant must show that there is a reasonable probability that, but for the deficiency, she would not have pleaded guilty and would have insisted on going to trial. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 254, 172 P.3d 335 (2007).

ii. PROSECUTORIAL MISCONDUCT

To prevail on a prosecutorial misconduct claim on collateral review, a petitioner must prove that "the alleged misconduct was either a constitutional error that resulted in actual and substantial prejudice or a fundamental defect that resulted in a complete miscarriage of justice." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). If a petitioner did not object

to misconduct at trial, the claim is waived unless the conduct was so flagrant and ill intentioned that it resulted in prejudice that could not have been cured by an instruction. *Id*.

      b.     PLEA AGREEMENT

      i.     DEFENSE COUNSEL'S PERFORMANCE

Tricomo has not shown either that counsel's performance was deficient or that she was prejudiced by the claimed deficiency in entering her plea agreement. The record demonstrates the contrary.

Here, Tricomo was originally charged with attempted first degree murder and first degree murder. Both of these charges included a deadly weapon enhancement. The first degree murder charge also contained an aggravator that "the defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." CP at 7.

Tricomo initially faced a higher sentence range than the 257 to 357 months she ultimately faced as a result of her plea. *See* RCW 9.94A.589(1)(b), .533(4)(a), .535(3)(b). The State amended the information the same day the "Statement of Defendant on Plea of Guilty" was filed. The amended information charged Tricomo with second degree murder, three counts of second degree assault, and second degree taking a motor vehicle without owner's permission. Tricomo pleaded guilty to the charges in the amended information.

According to the plea agreement, the prosecutor was permitted to argue for a sentence of 357 months, the high end of the standard range for the murder count with the other offenses to run concurrently. Tricomo, for her part, was "free to argue for a lesser sentence." CP at 30. The agreement also stated, "The judge may impose an exceptional sentence below the standard range

if the judge finds mitigating circumstances supporting an exceptional sentence." *Id*. Defense counsel later filed a sentencing memorandum and presented mitigation evidence.

At the sentencing hearing, defense counsel explained that

this case was originally charged . . . murder in the first degree and attempted murder in the first degree. The State and I through a series of negotiations based on evidence, theories of defense, and, of course, all of the considerations in negotiating have come to this resolution.

VRP (Jan. 28, 2015) at 82.

Tricomo appears to argue that counsel was ineffective because although the plea agreement said that she could argue for a sentence below 357 months, the agreement between her counsel and the State divested the trial court of its discretion to consider possible mitigating factors that would have resulted in a sentence lower than 357 months.[3] This argument ignores that defense counsel was, in fact, free to argue for a sentence lower than 357 months because the standard range was 257 to 357 months. Indeed, defense counsel argued for the lower end of the standard range. And the plea agreement provision on which Tricomo bases her argument afforded the sentencing court discretion to impose an exceptional sentence below the standard range where the court "finds substantial and compelling reasons" to do so. CP at 30.

Moreover, during the plea hearing, Tricomo acknowledged that she understood that her standard range sentence was 257 to 357 months and that the prosecutor would recommend 357 months. She also said she understood that her attorney would be able to argue for a lesser sentence. Finally, Tricomo benefitted from the plea agreement. Thus, Tricomo fails to show that her counsel

---

[3] Tricomo appears to confuse her attorney's ability to argue for a sentence below 357 months generally with her attorney's ability, within the plea agreement, to argue for an exceptional sentence below the standard range.

performed deficiently in negotiating her plea agreement or that she was prejudiced by counsel's performance.

Tricomo also argues that her counsel was ineffective for allowing a charge of second degree assault to be included in the crimes to which she pleaded guilty as part of the negotiated plea settlement. But Tricomo likewise fails to demonstrate either deficient performance or resulting prejudice. This argument appears to be the same double jeopardy claim that was resolved in Tricomo's direct appeal recast as an ineffective assistance of counsel claim. A petitioner cannot revise a previously rejected legal argument to create a new claim. *Davis*, 152 Wn.2d at 670-71. "'[A] defendant may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previous rejected claim.'" *Id.* at 671 (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001)).

Tricomo has not met her burden of showing either deficient performance or that she was prejudiced. We hold that her ineffective assistance of counsel claims regarding her plea agreement fail.

ii. PROSECUTORIAL MISCONDUCT

Tricomo also fails to show that the prosecutor committed error during the plea process. She does not point to any specific instance of prosecutorial error in the record. Rather, she includes this claim in her argument about ineffective assistance of counsel without providing separate treatment to it. Tricomo has the burden to show either constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice. *Lui*, 188 Wn.2d at 539. A petitioner "must state with particularity facts which, if proven,

would entitle [her] to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Relying solely on bald assertions and conclusory allegations is insufficient. RAP 16.7(a)(2)(i); *Rice*, 118 Wn.2d at 886. Tricomo fails to identify any specific evidence to support her allegation of prosecutorial misconduct. Accordingly, this argument fails.

B. SUPPLEMENTAL PETITION

In her supplemental petition, Tricomo makes an additional claim of ineffective assistance of counsel. Specifically, she contends that trial counsel was ineffective because he failed to produce a qualified expert at sentencing to offer an opinion on the effects of Paxil. Because her supplemental petition was filed over one year after her judgment became final, Tricomo must demonstrate that the claim is not time-barred.

Tricomo provides three distinct arguments in support of her claim that the ineffective assistance of counsel issue raised in the supplemental PRP is not time-barred. First, she asserts that the newly raised ineffective assistance of counsel claim is "part and parcel" of her timely claim from her original petition and that the trial court erred in not considering her proposed evidence about the effects of Paxil. Mot. To Amend Pet. at 4. Second, she argues that her newly raised ineffective assistance of counsel claim is "part and parcel" of the timely claim made in her original petition that counsel was ineffective in negotiating her plea bargain. *Id*. Third, Tricomo relies on *In re Personal Restraint of Davis*, 188 Wn.2d 356, 395 P.3d 998 (2017), to argue that we have the "discretion to extend the time" to file a PRP in spite of the one-year time-bar set forth in RCW 10.73.090. Mot. To Amend Pet. at 2.

We disagree with Tricomo and hold that Tricomo's supplemental petition is time-barred. Tricomo's untimely ineffective assistance of counsel claim is not "part and parcel" to her timely

claim that the trial court should have considered evidence regarding the effects of Paxil when it determined her sentence, nor is it "part and parcel" to her timely raised claim of ineffective assistance of counsel during the plea stage. Finally, we do not have the inherent authority to extend the statutory time-bar.

      1.     LEGAL PRINCIPLES

A PRP is time-barred when it is filed more than one year after the judgment becomes final unless a statutory exception applies. RCW 10.73.090, .100. RAP 16.8(e) provides, "The appellate court may allow a petition to be amended. All amendments raising new grounds are subject to the time limitation provided in RCW 10.73.090 and 10.73.100." This rule does not permit an untimely new claim in an amended petition to "relate back" to the timely filed petition, nor is there any Rule of Appellate Procedure that permits a petitioner to use a timely petition as a placeholder for later filed untimely claims. *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 446, 309 P.3d 459 (2013); *see also In re Pers. Restraint of Fowler*, 9 Wn. App. 2d 158, 164, 442 P.3d 647 (2019) (holding that a supplemental petition filed after the deadline was time-barred although the petitioner filed a timely placeholder petition that raised no substantive claims but merely stated that counsel needed time to review the case and prepare a petition), *review granted*, 195 Wn.2d 1007 (2020).

a. NEW INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AS "PART AND PARCEL" OF TIMELY RAISED CLAIM OF TRIAL COURT ERROR AT SENTENCING[4]

Tricomo argues that her ineffective assistance of counsel claim raised in the supplemental petition is "not truly [a] 'new claim[]'" but rather it is "another approach to the same argument" that she raised in her pro se petition about the trial court allegedly erring in not considering her proposed evidence at sentencing regarding the effects of Paxil. Mot. To Amend Pet. at 4; Suppl. Reply Br. at 7. We disagree. An ineffective assistance of counsel claim premised on trial counsel's failure to retain an appropriate expert involves distinct facts and legal theory from Tricomo's timely claim that the trial court erred in not considering Fernandez's opinion regarding the effects of Paxil at sentencing.

"[A]n 'amended' PRP does not relate back to the original filing and any 'amendment' or new claim must be timely raised." *Haghighi*, 178 Wn.2d at 446. However, Division One of this court has held that an ineffective assistance of counsel claim was not time-barred when it was "part and parcel" of a claim raised in the timely PRP. *In re Pers. Restraint of Wilson*, 169 Wn. App. 379, 387-88, 279 P.3d 990 (2012).

In *Wilson*, the petitioner filed a timely petition arguing instructional error and then later, in a supplemental brief filed after the time-bar, his attorney reframed the issue as ineffective assistance of counsel for proposing a defective instruction. *Id.* at 387. The State argued that this was a new claim that could not be brought after the expiration of the time-bar. *Id.* at 387.

---

[4] PRP counsel conflates "part and parcel" with "relating back." Mot. To Amend Pet. at 4-5. However, these are different concepts. *Haghighi*, 178 Wn.2d at 446-47.

The court held that the ineffective assistance of counsel argument was not a new claim. *Id.* at 387-88. Rather, it was part and parcel of the instructional error claim made in the timely petition. *Id.* at 387. This was so because under the facts of *Wilson*, there was no avenue for the petitioner to seek relief from a clearly erroneous instruction except through an ineffective assistance of counsel claim. *Id.* Wilson's trial counsel had proposed the erroneous instruction, preventing Wilson from raising the claim directly because the invited error doctrine barred relief. *Id.*

Wilson is both limited and distinguishable. It dealt specifically with an instructional error that could not be raised in *any manner* other than a claim of ineffective assistance of counsel. *Id.* at 387-88. Our Supreme Court later agreed that the decision in *Wilson* turned on the fact that "in order for the petitioner to prevail on his timely claim, he would have had to prove ineffective assistance of counsel, which made the claim "'part and parcel'" of the original claim and not a new claim." *Haghighi*, 178 Wn.2d at 447) (quoting *Wilson*, 169 Wn. App. at 387).

Here, as noted above, Tricomo originally framed this issue as whether the trial court erred in not considering the portion of Fernandez's report that discussed the effects of Paxil when it made its sentencing decision. In the supplemental petition, she claims she received ineffective assistance of counsel because her attorney failed to provide the court with an appropriate expert to render an opinion on Paxil's effects on her mental state.

Tricomo's ineffective assistance of counsel claim in her supplemental petition is a new and separate claim. Unlike *Wilson*, the determination of Tricomo's timely raised claim regarding the trial court's decision not to consider the portion of Fernandez's report regarding the effects of Paxil is not precluded if we decline to address the untimely ineffective assistance of counsel claim. *See* 169 Wn. App. at 387. Moreover, the arguments in support of these claims are inconsistent. On

19

the one hand, Tricomo argues that the trial court's decision not to consider the portion of Fernandez's report on Paxil was reversible error—which assumes that Fernandez was qualified to offer such an opinion. On the other hand, Tricomo asserts that Fernandez was an entirely unqualified expert and she was deprived of effective assistance of counsel when her attorney failed to produce a different expert.

Accordingly, like *Haghighi*, resolution of Tricomo's ineffective assistance of counsel claim "rests on facts and legal theory entirely distinct from" whether the trial court abused its ample discretion in declining to consider evidence regarding the effects of Paxil. 178 Wn.2d at 447. We hold that Tricomo's ineffective assistance of counsel claim is not part and parcel to her timely raised claim regarding the trial court's decision not to consider evidence on the effects of Paxil at sentencing.

b. NEW INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AS PART AND PARCEL OF TIMELY RAISED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

The ineffective assistance of counsel claim that Tricomo raised in her original petition, which we discuss in subsection a, *supra*, rests on a separate and distinct act of counsel than the one on which the newly raised ineffective assistance of counsel claim rests. The ineffective assistance claim brought in the original PRP asserts that counsel should have struck a better plea bargain during the plea negotiation stage. The ineffective assistance of counsel claim raised in the supplemental PRP asserts that counsel should have hired a different expert in support of her arguments at sentencing.

Tricomo acknowledges that the ineffective assistance of counsel claim raised in her supplemental petition is both factually and legally distinct from the claim she brought in her initial petition, but she argues that a claim of ineffective assistance of counsel requires the court to look

at counsel's "conduct *as a whole*" to determine whether it was constitutionally adequate and that her "focus on the plea portion of the case is not mutually exclusive to [her counsel's] ineffectiveness in a later phase of the case." Suppl. Br. of Pet'r at 4-5. Stated another way, Tricomo argues that raising one claim of ineffective assistance of counsel in a timely petition effectively preserves any additional claim of ineffective assistance of counsel, no matter how tangential, brought after the expiration of the statutory time-bar.

Tricomo relies on *Browning v. Baker*, 875 F.3d 444, 471 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 2608 (2018), and *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for her argument that we are compelled to review every possible act or omission of counsel when a claim of ineffective assistance of counsel as to *one* act or omission is brought. But Tricomo misconstrues *Browning* and *Strickland.*

In *Browning*, the court was asked to consider whether the district court erred in limiting the certificate of appealability to distinct instances of alleged unprofessional conduct by counsel or whether it should have granted the certificate of appealability to broadly allow the defendant to challenge any unprofessional act or omission of counsel. 875 F.3d at 471. *Browning* concerned the ability of the defendant to put his claims before the appellate court in the first instance. *Id*. *Browning* does not stand for the proposition that a reviewing court, once a particular act or omission of counsel is identified, must do a searching examination of the conduct of counsel throughout the entire proceeding. Moreover, *Browning* is of little assistance insofar as it concerned statutory federal appellate procedure.

*Strickland* likewise does not support Tricomo's position. In the portion of *Strickland* on which Tricomo relies, the United States Supreme Court was addressing the possibility that the

scope of its ruling would open the door to "intrusive post-trial inquiry into attorney performance" and encourage the "proliferation of ineffectiveness challenges." 466 U.S. at 690. Thus, a defendant is required to identify the specific acts or omissions of counsel that were not the result of reasonable professional judgment. Once that has occurred, the appellate court will judge the reasonableness of counsel's conduct *as to those identified acts or omissions* and determine whether counsel's conduct was reasonable in light of all the circumstances. *Id*. Tricomo's reliance on *Strickland* is misplaced because she is not now asking us to consider her original argument in light of all the circumstances but to address a wholly new ineffective assistance of counsel claim.

*Wilson* is instructive here. In *Wilson*, the State argued that the petitioner was procedurally barred from raising an ineffective assistance of counsel claim because the petitioner had brought a claim of ineffective assistance of counsel in his direct appeal that was based on a different act or omission of defense counsel and that rested on different legal arguments. 169 Wn. App. at 388. The State, in other words, made essentially the same argument that Tricomo makes here—that one claim of ineffective assistance of counsel is the same as every other claim of ineffective assistance of counsel, even when the claim rests on distinct conduct and legal theories. *Id*.

But the *Wilson* court disagreed, holding that because the ineffective assistance of counsel claim raised on direct appeal was based on conduct that was distinct from the conduct on which the PRP ineffective assistance of counsel argument was based, consideration of the claim was not procedurally barred. *Id*. We agree with *Wilson* that ineffective assistance of counsel claims that raise distinct complaints about the conduct of counsel and rely on distinct legal theories should not be treated as a single claim simply because they fall under the ineffective assistance of counsel rubric.

Here, Tricomo's ineffective assistance of counsel claim regarding the plea negotiation is not part and parcel of the ineffective assistance of counsel claim she raises in her supplemental petition regarding sentencing. Resolution of the two claims rests on distinct facts and legal theories. Thus, the ineffective assistance claim relating to counsel's conduct at sentencing, raised for the first time in Tricomo's supplemental petition, is time-barred.

c.     INHERENT AUTHORITY TO WAIVE THE STATUTORY TIME-BAR

In the alternative, Tricomo relies on *Davis* to argue that we should grant her motion to "extend" the one-year time limit and address the ineffective assistance of counsel claim raised in her supplemental petition on its merits. Mot. To Amend Pet. at 2-3 (citing 188 Wn.2d at 362 & n.2). We disagree.

In *Davis*, a death penalty case, the petitioner moved for an extension of time to file his PRP prior to the expiration of the one-year deadline. 188 Wn.2d at 362. Our Supreme Court granted the motion. *Id*. In a footnote, the court addressed the State's argument that the statute of limitations in RCW 10.73.090(1) is a mandatory rule that bars appellate consideration of PRPs after the deadline has passed. *Id.* at 362 n.2. The State cited to *In re Personal Restraint of Bonds*, 165 Wn.2d 135, 196 P.3d 672 (2008), and *In re Personal Restraint of Benn*, 134 Wn.2d 868, 952 P.2d 116 (1998). In rejecting this argument, the court stated,

> We do not find that holding in either opinion. The superior court and the Supreme Court in Washington have original jurisdiction to consider habeas challenges. WASH. CONST. art. IV, §§ 4, 6. The time limits in RCW 10.73.090-.100 are designed to protect the finality of judgments while permitting consideration of many potentially meritorious collateral challenges.

*Davis*, 188 Wn.2d at 362 n.2. The court concluded that "exercising our inherent power to grant a timely filed motion for extension of time is consistent with this design." *Id.*

23

We recently addressed a similar time-bar issue in *Fowler*, 9 Wn. App. 2d at 167, where the petitioner argued that the time for filing his PRP should be extended under RAP 18.8(a) and (b). In *Fowler*, the petitioner hired an attorney to file a PRP; however, the attorney resigned from the Washington State Bar Association in lieu of discipline prior to filing Fowler's petition. *Id.* at 161. The petitioner hired a new attorney who filed a placeholder petition that did not raise any issues but instead stated that in light of the issues with prior counsel and the fact that grounds for relief were unclear, more time was needed to prepare and file the petition. *Id.* Later, after the one-year time limit, counsel filed a supplemental petition that for the first time raised substantive issues. *Id.* at 162. We concluded that RCW 10.73.090 is a statutory limitation period and we do not have the authority, under RAP 18.8, to waive RCW 10.73.090. *Id.* at 167 (citing *Benn*, 134 Wn.2d at 939; *State v. Robinson*, 104 Wn. App. 657, 665, 17 P.3d 653 (2001)).

Tricomo argues that *Fowler* directly conflicts with *Davis*.[5] However, the motion to extend in *Davis* was granted after the State failed to timely respond pursuant to RAP 17.4(e).[6] 188 Wn.2d at 362. In both *Benn* and *Bonds*, the court discussed RAP 18.8(a). In *Benn*, the court held that "RAP 18.8(a) does not allow the court to waive or alter statutes." 134 Wn.2d at 939. And the

---

[5] Tricomo attempts to distinguish her case from *Fowler* by arguing that she at least filed a pro se PRP before the one-year time limit, thus putting the State on notice that Tricomo was contesting her attorney's performance as well as the trial court's failure to take into account the effects of Paxil.

[6] RAP 17.4(e) provides,
> A person with a recognized interest in the subject matter of the motion may submit a written answer to the motion. Unless the court directs otherwise, any answer must be filed and served no later than ten (10) days after the motion is served on the answering party. The moving party may submit a written reply to the answer to the motion. Unless the court directs otherwise, any reply to an answer must be filed and served no later than three (3) days after the answer is served on the moving party, but at least one (1) day prior to the date set for oral argument.

*Bonds* court discussed *Benn*, noting that "RAP 18.8(a) (authorizing waiver or alteration of court rules) does not apply to a statute of limitations like RCW 10.73.090." 165 Wn.2d at 142. *Fowler*'s holding that the time for filing a PRP could not be extended does not conflict with *Davis* because the court in *Fowler*, like the court in *Benn*, was addressing RAP 18.8.

We adhere to our decision in *Fowler* and hold that RAP 18.8 does not provide us with the authority to either extend or waive the statutory time-bar for filing PRPs set forth in RCW 10.73.090.

Tricomo also contends that we have the inherent authority to waive the statutory time-bar. Tricomo again points us to *Davis*, where our Supreme Court held that it had the inherent power to extend the time for filing a collateral attack petition under article IV, sections 4 and 6 of the Washington Constitution. Tricomo posits that the Court of Appeals possesses this same "inherent" power. Suppl. Br. of Pet'r at 10.[7]

---

[7] In support of her argument, Tricomo also cites to article IV, section 30 of the Washington Constitution; RAP 16.3(c); RAP 16.5(a); RCW 2.06.030; RCW 2.28.010; RCW 2.28.150. Although Tricomo cites to these provisions, she provides no argument or analysis as to why these provisions should persuade us to hold that we have the authority to ignore the time-bar. Moreover, article IV, section 30 does not provide the Court of Appeals original jurisdiction in habeas corpus proceedings. This provision merely authorizes the legislature to create the Court of Appeals and strictly limits the power of the Court of Appeals to that provided by statute.

We disagree with Tricomo that we have the inherent power to extend the statutory limitation period set forth in RCW 10.73.090. In *Davis*, our Supreme Court held that its inherent power to grant a timely filed motion to extend the statutory filing period was derived from its original jurisdiction to consider habeas challenges under article IV, section 4 of the Washington State Constitution. 188 Wn.2d at 362 n.2. *Davis* does not hold or even suggest that the Court of Appeals has this same power. Nor is the Court of Appeals granted this express power by the plain language of article IV. Original jurisdiction in habeas corpus proceedings is granted exclusively to the superior court and the Supreme Court. *See* CONST., art. IV, §§ 4, 6. We are unpersuaded that we have the authority to ignore the statutory time-bar for filing a PRP.[8] Accordingly, we deny Tricomo's motion to extend the one-year time-bar set forth in RCW 10.73.090.[9]

---

[8] Tricomo suggests that we have the power to grant an extension based on *State v. Chetty*, 167 Wn. App. 432, 272 P.3d 918 (2012). But *Chetty* is inapposite because *Chetty* involved the enlargement of time to file a notice of direct appeal, not a PRP. Tricomo also relies on *Martinez v. Ryan*, 566 U.S. 1, 18, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), in which the United States Supreme Court held that "[a] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffectiveness at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Suppl. Br. of Pet'r at 15-17 (quoting 566 U.S. at 18). *Martinez*, however, is unhelpful to Tricomo because we do not rely on federal habeas procedure to determine our statutory authority with respect to PRPs. *See In re. Pers. Restraint of Runyan*, 121 Wn.2d 432, 441, 853 P.2d 424 (1993) (declining to apply federal law regarding the federal suspension clause in a challenge to the constitutionality of RCW 10.73.090 because it is not "determinative as to the boundaries of our suspension clause" due to "the differing functions of state and federal habeas").

[9] Even if we had the authority to ignore the time limit set forth in RCW 10.73.090, we would decline to exercise it in this case. Tricomo has set forth no argument about when a court should hold the interests of justice require extension of the time-bar, and she does not persuade us that her case should be such a case.

No. 51741-8-II

CONCLUSION

The issue raised in Tricomo's supplemental petition is time-barred. The issues raised in the original petition are either denied on their merits or are denied because they were resolved on direct appeal. Accordingly, we deny Tricomo's petition.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.

27